UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK TAYLOR,  Case No. 09-14639

    Plaintiff,

v.  Magistrate Judge R. Steven Whalen

DEPARTMENT OF HUMAN SERVICES
of the STATE of MICHIGAN,

    Defendant.
                                           /

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment [Docket #39], filed August 1, 2011.  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**I.  BACKGROUND FACTS**

Plaintiff filed suit on November 29, 2009, alleging racial discrimination in the circumstances surrounding his attempts to be rehired after being laid off by Defendant Department of Human Services of the State of Michigan ("DHS").  Plaintiff's Amended Complaint, filed March 27, 2011, alleges violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), the Civil Rights Act of 1991, and 42 U.S.C. §§ 1981 and 1983.  *Amended Complaint, Docket #28.*

The amended complaint makes the following factual allegations.   On February 4, 2001 Defendant hired Plaintiff as a "Fire and Safety Officer 7" at the Maxey Boys Training School ("Maxey").  *Amended Complaint* at ¶7.  Plaintiff describes his job duties as "ensuring that all technical assets were intact and functioning correctly." *Id.* at ¶8.  On May 4, 2008, he was notified that he was to be laid off due to downsizing. *Id.* at ¶10.  On June 12,

2008, Plaintiff filled out a "Recall Preference Form" pursuant to a collective bargaining agreement ("CBA") between Defendant and UAW/MSEA, at which time he was given the option of choosing which Michigan counties he wished to be considered for rehire. *Id.* at ¶11.  Plaintiff's written preference to take *any* opening for a Fire and Safety Officer job anywhere in the state, was known as "category 99." *Id.* at ¶12.  On July 1, 2008, he received a letter confirming that he had been added to the recall list until June 18, 2011. *Id.* at ¶¶15-16.

Plaintiff, an African-American, alleges that in February, 2009, he discovered that an employee of Defendant, Lynn Eiseler, intentionally removed him from category 99. *Id.* at ¶17.  The Complaint states that the same month, he learned that two white individuals who had also made a category 99 option to consider state-wide positions had been recalled. *Id.*  He also learned that both individuals had less seniority than he. *Id.* at ¶20.  He alleges that Defendant also hired white males who "were not on any recall list and were ineligible to be hired ahead of [him]." *Id.* at ¶21.  On June 22, 2009, Plaintiff filed a charge of race discrimination with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶22.  Plaintiff filed suit in this Court on November 29, 2009. *Id.* at ¶24.  He requests monetary damages and the reinstatement of his place on the statewide recall list. *Id.* at pg. 6.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the

non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. DISCUSSION

Defendant argues that Lynn Eiseler, an employee of DHS's central office human resources division, removed the "99" designation in July, 2008 at Plaintiff's verbal request. *Defendant's Brief* at 5-6. She testified that she did not specifically recall the request, but stated that she would have changed the "99" designation after receiving a request by telephone. *Defendant's Attachment 1, Exhibit 1*. Upon eliminating the "99" designation in July, 2008, the Plaintiff's prospective recall locations were limited to the eight counties Plaintiff had identified as preferential recall locations.[1] *Id.* On July 1, 2008, Eiseler sent Plaintiff a followup letter confirming his alleged desire to be taken out of consideration for a statewide recall. *See Defendant's Brief* at 11-12, *Attachment 1, Exhibit 7*. Defendant notes

---

[1] The remaining counties were restricted to a roughly 100-mile radius surrounding metropolitan Detroit: Oakland (63), Wayne (82), Macomb (50), Genesee (25), Lapeer (44), Saginaw (73), Tuscola (79), and Shiawassee (76).

further that while Plaintiff claims that he did not receive the letter, he admits that he spoke to Eiseler by telephone and discussed the meaning of the a "99" designation. *Defendant's Brief* at 11, *Attachment* 1, Plaintiff's dep. at pg. 17-21. Defendant contends that even assuming that Plaintiff's designation was not changed at Plaintiff's request, he cannot show that Eiseler's re-designation resulted in an adverse employment action or that her actions were inspired by racial animus.

Defendant also disputes the contention that Clarence Seigle and Gerald Gross, two white fire/safety officers with less seniority than Plaintiff, received preferential treatment. In responding to Plaintiff's February, 2000 grievance, Defendant asserted that Paul Dean, a labor relations specialist, discovered that in fact, Gross was recalled to a fire/safety position with the Department of Community Health ("DCH") in Westland *prior* to Plaintiff's layoff. *Defendant's Attachment 3,* Dean dep. at 23. Dean testified further that Seigle, also hired by DCH in Westland, was rehired into a different classification (storekeeper) before later obtaining a position as a fire and safety officer. *Id.* at 23-26. Finally, Defendant contends, in effect, that Plaintiff's "call-back" rights to seniority-based benefits were extinguished upon his May 4, 2009 resignation. *Defendant's Brief* at 8.

### A. Applicable Law

Plaintiff has offered no evidence that anyone in a decision-making position expressly stated a desire to fire him or take any other adverse action based on race. Thus, Plaintiff's claim of racial discrimination under Title VII is based on circumstantial evidence.[2] In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411

---

[2]

"The burden shifting approach developed by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green,* applies to § 1981 claims." *Hines v. City of Brighton,* 539 F.Supp.2d 908, 922 (E.D.Mich. 2008).

U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once he has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[3] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

In order to establish a prima facie showing of racial discrimination in such a case, the Plaintiff must introduce sufficient evidence that (1) he was a member of the protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824. However, this factor may take various forms, depending upon the facts and allegations of a particular case. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, n.6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hazle v. Ford Motor Company*, 464 Mich. 456, 463, n.6, 628 N.W.2d 515 (2001) ("the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand"); *Shah v. General Electric Company*, 816 F.2d 264, 268-271 (6th Cir. 1987)

---

[3]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

("However articulated, the significance of the prima facie case is that it permits an 'inference of discrimination...because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

### B. The Prima Facie Case

Defendant concedes that Plaintiff, as a member of a protected class and a qualified fire and safety officer, can establish the first and third elements of a prima facie case. Defendant argues however, that Plaintiff cannot show he suffered an adverse employment action or that he was treated differently than similarly situated caucasian employees.

#### 1. The Removal of the "99" Designation

Here, Defendant argues that Plaintiff was removed from the "99" category at his own request. 11-12. Even assuming that Eiseler erred by removing Plaintiff from the designation, Defendant argues that Plaintiff did not suffer an adverse employment action, contending that he has "produced no evidence" that his removal from the '99" classification "kept him from being recalled." *Defendant's Brief* at 11.

The argument that Plaintiff's removal from the "99" list did not amount to an adverse action is not well taken. Under Title VII, an "adverse action" includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 662 (6th Cir. 1999). Plaintiff does not dispute the propriety of his June, 2008 layoff. However, his claim that he was deprived of statewide job opportunities (if for nothing else, an interview) under the terms of the CBA constitutes "a material loss of benefits."

Nonetheless, claims pertaining to the removal of the "99" designation will be dismissed. To begin with, parties disagree as to whether Plaintiff asked to be removed from the statewide recall list or was removed without his knowledge. Eiseler's position that Plaintiff requested the removal is supported by his acknowledgment that he discussed the meaning of the "99" designation with Eiseler in the same month that he was removed from the list. *Defendant's Attachment 1,* Mack Taylor dep at pg. 21. Defendant has presented a copy of a followup letter from Eiseler to Plaintiff reflecting his alleged request to be taken from the "99" designation. *Defendant's Attachment 1*, *Exhibit 7.*

Even assuming that Plaintiff could establish that Eiseler removed him from the statewide list without his permission or ought to have secured his permission in writing, her actions do not give rise to an inference of unlawful discrimination. Although Plaintiff claims that he did not receive Eiseler's July 1, 2008 written communication, he does not dispute the authenticity of the letter and in fact, uses the communication to support an unrelated argument. *Plaintiff's Exhibit 12.* It strains credulity to accept that after wrongly removing Plaintiff from the "99" list, Eiseler would have memorialized her misfeasance and sent him copy. Further, in pursuing his grievance against DHS, Plaintiff later acknowledged that he had been taken off the statewide list "per a miscommunication." *Plaintiff's Exhibit 15.*

Finally, even assuming that Eiseler deliberately removed him from the "99" designation, Plaintiff has provided no factual support for his claim that Eiseler's actions were inspired by racial animus, *i.e.,* a practice of removing African-Americans from the "99" designation or otherwise depriving him or others from job opportunities provided to Caucasians. "Miscommunication" (Plaintiff's word) does not imply race-based motivation. Plaintiff does not allege that either of his "comparable" white individuals, Gross and Seigle, asked to receive a "99" or obtained jobs as a result of being placed on the statewide list. In

fact, Both Gross and Seigle's recall applications indicate that they did not request a "99" designation.[4] *Plaintiff's Exhibits 6-7.*

### 2. Gross and Seigle

As discussed above, I reject Defendant's position that the deprivation of job opportunities did not amount to an adverse action. As to the fourth element of a prima facie claim of discrimination, Defendant contends that the jobs acquired by Gross and Seigle were either not available or not applied for by Plaintiff at the time of his layoff. *Id.* Following Defendant's reasoning, Gross and Seigle are thus, not "similarly situated."

Defendant has not shown as a matter of law that Gross and Seigle, both white males, were not similarly situated. Defendant relies solely on Paul Dean's deposition testimony for its argument that Gross obtained his new position prior to Plaintiff's June, 2008 layoff and that Seigle was hired as a shopkeeper, a job not requested by Plaintiff. However, Paul Dean's testimony is sketchy as to the both the time line and individuals. First, he states that Seigle was hired "*I want to say* three days before Mr. Taylor was laid off." *Plaintiff's Exhibit 4,* Paul Dean dep. at pg. 22-23 (emphasis added). He goes on to testify erroneously (or at least contrary to Defendant's current position) that it was Gross and not Seigle who took the shopkeeper position. *Id.* at pg 23. Dean then admitted "[h]onestly I don't remember which one was which." *Id.* Dean also testified erroneously that Seigle was laid off in May, 2008 when in fact, both Seigle and Dean had been laid off by March, 2008. *Plaintiff's Exhibit 6-7.* When asked how Seigle obtained the job of shopkeeper despite the fact that he asked for only "fire safety" jobs on his recall application, Dean admitted that he did not know (1) whether the shopkeeper job was the result of a recall or independent job application (2) whether

---

[4]Paragraph 17 of the Amended Complaint refers to two other white individuals who were not removed from "99" category and received out state jobs. However, these individuals have not been named or otherwise identified.

Seigle possessed special qualifications for the shopkeeper position or, (3) whether Seigle was transferred from the job of shopkeeper to a fire/safety position in 2008 or 2009. Paul Dean dep. at pg. 23-27.

All that can be gleaned from Defendant's evidence is that Dean *believes*, but is not sure, that one of these two individuals was hired three days before Plaintiff was laid off. This is not sufficient to conclude as a matter of law that Gross and Seigle, both with less seniority than Plaintiff, were recalled before Plaintiff was laid off or that they were not similarly situated.[5] Dean's inconclusive statements are further undermined by the affidavit of Vanessa Chubb, Plaintiff's union representative during the grievance process, who states that in her capacity as Plaintiff's representative, she "researched Mr. Taylor's complaint and verified that Gerald Gross and Clarence Seigle had been recalled to positions *while* [Plaintiff] was laid-off . . ." *Plaintiff's Exhibit 2* at ¶10 (emphasis added). Although Defendant argues in reply that "Chubb gives no basis for her assertions" and that Dean's testimony should be credited because "he discussed . . . his findings," the fact remains that Dean's deposition testimony was no more convincing than Chubbs'. *Reply* at 3.

Of at least equal concern is the fact that while Seigle did not apply for recall as a shopkeeper, he was able to obtain this position fairly soon after his layoff. While it is possible that Seigle applied for the shopkeeper position independent of the recall process, it is unclear why he would not have included "shopkeeper" on his recall application, given that his "recall" status under the CBA would seemingly have given him some advantage over making a separate application. That fact that Seigle, an individual with less seniority, was

---

[5] At a minimum, the fact that Defendant cannot establish as a matter of law that Gross and Seigle were hired before Plaintiff was laid off also defeats the argument that he did not suffer an adverse action.

-9-

able to obtain an interview (and later, a job in fire/safety position by way of the "stepping stone" job) while Plaintiff was not, lends credence to the claim that the recall process favored similarly situated white individuals.[6] The inference of improper motive is underscored by that the fact that while Plaintiff listed Wayne County as a preferred recall location, Seigle did not - yet was able to secure a job position in that county. *See* fn. 1, above; *Plaintiff's Exhibit 6.*

### 3. Entitlement to Open Positions

Finally, the Court addresses Plaintiff's contention that his seniority entitled him to a position, rather than merely an interview, for a position he interviewed for in Caro, Michigan. Defendant cites Dean's testimony that a laid off employee applying for a position outside of his department would not be entitled to more than an interview. *Defendant's Attachment 3,* Paul Dean dep. at pg. 9.

In its *Reply,* Defendant also produced Art. 12, Sec. F of the MSEA Labor and Trades and Safety and Regulatory Units CBA which states as follows:

> If no employee is on such Departmental Recall List, the Employer shall recall one of the three (3) most senior employees from Statewide Interdepartmental Recall List for the class and level who have designated the county in which the vacancy exists as one to which he/she will accept recall. In the event there are less than three (3) names the Employer shall recall from the remaining available name(s) on the list.

*Reply, Exhibit 1.* Thus, Defendant's contention that Plaintiff would have been entitled to recall for a position *only* within the county or agency/facility of his previous employment (Livingston/DHS/Maxey) and was not entitled to more than an interview for the Caro,

---

[6] Defendant suggests that Plaintiff was not "qualified" for the shopkeeper position, and therefore Seigle is not comparable or similarly situated. However, the record is devoid of any evidence that Seigle was any more qualified than the Plaintiff.

Michigan opening (Tuscola/DCH/Caro site) reflects a sound interpretation of the CBA. *Id.* As such, claims regarding Plaintiff's purported entitlement to jobs, rather than just interviews, outside of the former county or agency of his employment are subject to dismissal.

### C. Qualified Immunity

Defendant notes that neither Eiseler nor Dean have been named but argues nonetheless that because they did not violate any of Plaintiff's constitutional rights, claims against them brought under 42 U.S.C. § 1983 would be barred by qualified immunity. *Defendant's Brief* at 16-18. I agree that under no set of facts could Eiseler's actions amount to a constitutional violation. Because she did not violate Plaintiff's constitutional rights, she would also entitled to qualified immunity, assuming she were a named Defendant. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In contrast, Dean testified that he was labor relations expert for Michigan's Civil Service Commission and was responsible for investigating Plaintiff's grievance regarding similarly situated white individuals with less job seniority. *Plaintiff's Exhibit 4,* Paul Dean dep. at pgs. 5, 12. Dean's role in handling the grievance goes to the heart of allegations that Plaintiff was not given the opportunities presented to similarly situated white individuals. Moreover, the deprivation of job opportunities regarding allegations pertaining to the positions obtained by Gross and Seigle on the basis of race constitutes a "clearly established" constitutional right at the time of the events in question. *See Amini v. Oberlin College,* 440 F.3d 350, 358 (6th Cir. 2006)(citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir.2001)(42 U.S.C. § 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors.").

The problem is that although Plaintiff has named "John Doe" Defendants in his

-11-

complaint, he has neither named Dean nor served him with process. Nor has he moved to amend the complaint to name Dean or anyone else. Therefore, the "John Doe" Defendants will be dismissed without prejudice. However, Plaintiff may, within 30 days, file a motion for leave to file an amended complaint.

### IV.  CONCLUSION

For these reasons Defendant's Motion for Summary Judgment [Docket #39] is GRANTED IN PART AND DENIED IN PART as follows:

1. The motion is GRANTED as to claims pertaining to the removal of Plaintiff's "99" designation.

2. The motion is DENIED as to claims involving the Gross and Seigle rehire.

3. The motion is GRANTED as to claims regarding as to Plaintiff's claim that he is entitled to a *job* outside the county or agency of his former employment, as opposed to an *interview*.

4. The "John Doe" Defendants are DISMISSED WITHOUT PREJUDICE. Plaintiff may file a motion for leave to file an amended complaint (which will include a copy of the proposed amended complaint) within 30 days of the date of this Opinion and Order.

IT IS SO ORDERED.

                                                  s/ R. Steven Whalen
                                                  R. STEVEN WHALEN
                                                  UNITED STATES MAGISTRATE JUDGE

Date:  March 30, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 30, 2012.

                                        s/Johnetta M. Curry-Williams
                                        Case Manager